**MILTON SCHWARTZ & ASSOCIATES, ARCHITECTS,** a partnership composed of Milton Schwartz, et al., Plaintiffs,

v.

The **MAGNESS CORPORATION,** a corporation of the State of Delaware, Defendant.

Civ. A. No. 4701.

United States District Court, D. Delaware.

Jan. 4, 1974.

James F. Davis, of Biondi & Babiarz, Wilmington, Del., for plaintiffs.

Morton Richard Kimmel, of Kimmel & Spiller, Wilmington, Del., for defendant.

## OPINION

STAPLETON, District Judge:

This is a diversity action for breach of contract. Plaintiffs are a partnership, Milton Schwartz and Associates, Architects, whose offices are located in Philadelphia. Defendant is The Magness Corporation, a land developer incorporated in Delaware. Defendant has moved for dismissal under F.R.Civ.P. 12(b), arguing that, under the contract between the parties, the plaintiffs' claim must be remitted to arbitration.

On February 15, 1971, the parties entered into a contract under which the plaintiffs undertook to provide architectural services for the construction of a proposed motor hotel on land owned by the defendant and located outside Wilmington. Plaintiff performed under the contract until September 1972, when relations between the parties rapidly deteriorated. The unrebutted affidavit of William Alesker, one of the plaintiffs' partners, indicates that on September 7 he, representatives of the defendant, and a bidder met to discuss possible reductions in construction costs. According to the same affidavit, plaintiff shortly thereafter sent defendant a letter pertaining to the issues discussed at that conference. Plaintiffs' letter went unanswered and subsequently plaintiffs made numerous futile efforts to contact the defendant. After the defendant failed to make payment on the November 1 billing statement forwarded to it, plaintiffs engaged counsel for the purpose of compelling collection. By letter dated April 4, 1973 counsel demanded payment from defendant. Defendant continued to remain silent and, on May 1, counsel advised defendant that suit would be instituted if defendant did not act promptly to insure payment. By letter dated June 11, 1973, defendant's counsel informed counsel for plaintiffs that the contract was terminated, that defendant considered the plaintiffs in breach and that defendant might counterclaim if sued by plaintiffs. On August 8, 1973, plaintiffs brought suit for $31,970.32 allegedly due for services performed under the contract. In response, defendant filed the instant action to dismiss.

Defendant's motion to dismiss is based on the following clauses of the contract:

11.1 All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law.

11.2 Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the

demand for arbitration be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

11.3 The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof.

Plaintiffs' position is that defendant has waived his right to arbitration under the contract. He contends that the expiration of eleven months between the parties' initial dispute and the defendant's demand for arbitration constitutes an "unreasonable delay" and hence fails to meet the contractual condition that "demand shall be made within a reasonable time after the claim, dispute or other matter in question has arisen." Plaintiff also argues that defendant's warning that, if sued, it might counterclaim is incompatible with a genuine intention to arbitrate and, accordingly, operates to bar defendant from now obtaining arbitration. Finally, plaintiffs assert that, by "terminating" the contract, defendant placed plaintiffs' claim outside the ambit of disputes covered by the arbitration agreement. The Court finds merit in none of these arguments.

 The contract between the parties stipulates that it will be interpreted in accordance with the law of the plaintiffs' state, Pennsylvania. Pennsylvania is among the many jurisdictions that look with favor on arbitration when the agreement between the parties clearly indicates that it is the preferred forum for resolving their disputes. Mendelson v. Shrager, 432 Pa. 383, 248 A.2d 234 (1968); Wm. Linker Co., Inc. v. Feinberg, 360 Pa. 601, 62 A.2d 839, 840 (1949); Miller v. Allstate Insurance Company, 238 F.Supp. 565, 567 (W.D.

Pa.1965); see generally 5 Am.Jur.2d p. 522. While there is no Pennsylvania case which is particularly helpful on the issue of whether the defendant's demand for arbitration was untimely,[1] the Pennsylvania policy favoring arbitration would be ill-served by a holding in this case favorable to the plaintiffs.

 Assuming without deciding that the "reasonable time" requirement of Section 11.2 is applicable to the one who is the object of a claim as well as to the one who asserts it,[2] it is fair to assume that the parties intended "reasonableness" to be judged in light of their respective positions at the time the section might become operable. The practicalities of dispute development and resolution are such that a period of delay unreasonable for a claimant is not necessarily also unreasonable for his opponent. As to the latter, I am convinced that, in the absence of unusual circumstances, a "reasonable time" requirement should not be construed to impose the burden of considering an arbitration remedy prior to the time his potential adversary makes it clear that some form of enforcement proceeding will be forthcoming. To impose such a burden prior to that point would require a party to precipitate a proceeding which might not otherwise be necessary and which neither side may want.

 In this case Schwartz, the party with the grievance, did not make a formal demand on its claim until April 4, 1973 and suit was not threatened until May 1, 1973. Suit was not actually brought until August 8, 1973 and Magness asserted his right to arbitration promptly thereafter. I need not determine the precise date upon which the defendant became obligated to consider and then pursue arbitration. Even if that date is April 4, 1973, I would still

1. Tourison v. Balka et al., 4 Pa.D. & C.2d 122 (Pa.Com.Pl.1954) relied on by the plaintiffs, is not controlling. There, the court declined to require arbitration because the dispute was not covered by the arbitration clause, and mentioned the eighteen month delay between the dispute's inception and the demand for arbitration only in dicta.

2. The last sentence of the section pertaining to demands after the running of the statute of limitations would support a contrary construction.

conclude that the defendant has not been delinquent in asserting his rights under the arbitration clause.

 Equally untenable is the plaintiffs' second theory of waiver—that Magness' threat of a counterclaim negated a good faith intention to arbitrate. This theory might have some merit if the defendant had formally filed a counterclaim prior to demanding arbitration. *Cf.* E. I. DuPont deNemours & Co. v. Lyles and Lang Const. Co., 219 F.2d 328, 334 (4th Cir. 1955). In that event, the defendant would arguably have "consented" to the Court's jurisdiction and thereby renounced his right to choose an alternative forum. But the informal mention of a counterclaim in correspondence between counsel stands on an entirely different footing. It is best characterized not as an attempt to invoke the Court's jurisdiction but merely as one of the many ploys counsel use either to forestall litigation or to reach an informal settlement. I conclude, therefore, that defendant did not waive his right to arbitration by warning plaintiffs of a possible counterclaim.

Finally, I must reject plaintiffs' assertion that the defendant's "termination" of the contract removed plaintiffs' claim from the realm of disputes governed by the arbitration agreement. Under Pennsylvania law, when parties have entered into a general agreement to arbitrate all disputes arising from or under a contract, termination of the contract by a party pursuant to a contract option does not terminate his right to insist upon arbitration of claims arising under the contract during its existence. Textile Workers Union of America, AFL–CIO v. Herbert B. Newton & Co., 394 Pa. 422, 147 A.2d 155 (1959); Aster v. Jack Aloff Company, 190 Pa.Super. 615, 155 A.2d 627 (1959).

It follows that the controversy giving rise to this case should be arbitrated. The appropriate course is not, however, to dismiss the action as the defendant suggests. Rather, it will be stayed pursuant to Section 3 of the Federal Arbitration Act. 9 U.S.C. § 3. That section "authorizes a federal court to stay proceedings pending arbitration not only when the arbitration agreement is validated by . . . Arbitration Act but also when the agreement to arbitrate is validated by applicable state law." United States for the Use and Benefit of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., 364 F.2d 705 (2nd Cir. 1965).

Submit order.