823 So.2d 305 (2002)
PULTE HOME CORPORATION, Appellant,
v.
Susan M. SMITH, James E. Smith, and Ryan C. Smith, a minor, by his parents and natural guardians, Susan M. Smith and James E. Smith, Annette Honnila, Cole Honnila, a minor, by his parents Annette Honnila and Kevin Honnila, individually and on behalf of all others similarly situated, Appellees.
No. 2D01-3761.
District Court of Appeal of Florida, Second District.
August 14, 2002.
*306 Timothy A. Hunt and Lynn C. Hearn, Tampa, for Appellant.
Mark C. Menser, Fort Myers, for Appellees.
SALCINES, Judge.
Pulte Home Corporation, one of the defendants in the action below,[1] appeals a nonfinal order denying its motion to compel arbitration. We reverse.
Susan Smith, James Smith, and Annette Honnila, together with the minor children, Ryan Smith and Cole Honnila, filed a nineteen-count first amended complaint in which they sought relief for themselves and also sought class certification in order to obtain relief on behalf of other unnamed individuals.[2] The complaint alleged that the Smiths had entered into a contract with Pulte for the construction and purchase of a new home and that the contract, entitled "Single Family Purchase Agreement," contained an arbitration clause. The complaint also alleged that Ms. Honnila was a subsequent purchaser of a home constructed by Pulte; that she and her son resided in that home; and that Pulte's limited warranty, entitled "Pulte Protection Plan," was assigned or transferred to Ms. Honnila.
Among other claims,[3] the plaintiffs alleged that various defendants, including *307 Pulte, had designed, constructed and manufactured homes below the minimum state building codes' requirements and that the violations had caused water intrusion. They maintained that the water intrusion had created toxic mold making the homes unfit and unsafe for human habitation, that the contaminants within the homes had caused or exacerbated illness, and that the conditions had resulted in various other personal injuries and property damage. The plaintiffs also alleged that Pulte's arbitration clauses were procedurally and substantively unconscionable and, further, that Pulte employed certain practices in its presentation of documents to home buyers, which misled the buyers in regard to the arbitration clauses.
The first four counts of the complaint pertained to relief sought on behalf of the class.[4] Count I, entitled "Strict Liability: Statutory Building Code Violations," alleged that all the defendants, including Pulte, had not complied with the requirements of various state building codes and, as a result, the plaintiffs had "suffered personal injuries and costs for failure of consideration, damages, loss of value, costs of inspection and costs of repair of their homes." Counts II IV were directed against only Pulte. Count II attacked the validity of Pulte's arbitration agreements and sought rescission and a declaration that the arbitration clauses were null and void as substantively and procedurally unconscionable. Count III asserted that Pulte utilized unfair and deceptive trade practices in its presentation to home buyers of the single-family purchase agreement and the arbitration clause within that agreement and, among other things, alleged:
32. As a direct and proximate result of these acts and practices the Plaintiffs and the class members were damaged in that, in the event of a breach of any contract or failure to perform by PULTE, Plaintiffs are denied due process including the right to trial by jury, the right to a neutral and detached forum, the right to bring suit without payment of excessive fees, the right to discovery, the right to confront witnesses, the right to counsel, the right to reliance upon the rules of evidence, the right to rely upon binding legal precedents, the right to a public trial and the right to appeal.
(Emphasis supplied.) Count IV asserted unfair and deceptive trade practices by Pulte in regard to its limited warranty and an arbitration provision contained within that document. In part, that count stated:
45. As a direct and proximate result of these acts and practices the Plaintiffs *308 and the class members were damaged by virtue of purchasing homes that are unfit and dangerous for habitation due to building code violations and toxic mold intrusion, and being unable to pursue remedies in a court of law in accordance with their legal and constitutional rights. The Plaintiffs, and all class members similarly situated, are entitled to recover damages, attorney's fees and costs under § 501.211 Fla. Stat.
(Emphasis supplied.)
The remaining fifteen counts specifically related to the named plaintiffs individually, and set forth allegations similar to those of the class action as well as adding claims for an array of injuries sustained individually by those named plaintiffs. For example, counts V-VIII purported to assert unfair and deceptive trade practices, in regard to the named plaintiffs, like those alleged within the class action and incorporated by reference specifically enumerated paragraphs contained within the class action which would relate to the individual claims for unfair and deceptive trade practices. However, as to the minor children, the plaintiffs added that the children possessed "certain Constitutional and statutory rights which could not be waived" on their behalf by any parent or third party, that Pulte had failed to disclose the rights pertaining to the children, that the children had suffered illness and injury due to the presence of toxic mold in the houses built by Pulte, and that the children stood to be denied "their constitutional rights in their efforts to obtain relief." As framed in the prayers for relief pertaining to the two children, the minor, Ryan Smith, not only sought rescission or declaratory relief to enable him to proceed with a trial by jury, but also demanded actual and compensatory damages "as provided by law."
Count IX, which pertained exclusively to an alleged slip and fall by Susan Smith, incorporated by reference the paragraphs within the complaint which set forth the alleged violations of the state building codes. In that count, Ms. Smith maintained that as a result of "the Defendants'" negligence, she was "injured in and about her body and extremities, suffered pain therefrom, incurred medical expenses in the treatment of her injuries, suffered physical handicap and her working ability was impaired." Among other demands for recovery, she sought actual and compensatory damages for her own personal injuries. Then, count X, also exclusively pertaining to Ms. Smith, alleged that she was injured, that "the defendants" knew or should have known "the house was unsafe, it was not built according to the standards of the State Minimum Building Codes and that there was a great likelihood of injury to persons and property from the conditions existing thereon." She then asserted that those conditions caused water intrusion, water damage, and the growth of toxic molds which gave rise to "the need for extensive repairs and other associated costs" for which she sought recovery.
The remaining nine counts continued similarly interjecting claims for expenses incurred individually by the plaintiffs for repair to their homes as well as other actual and compensatory damages pertaining to the particular plaintiff named within each count.
Pulte filed a motion to compel arbitration which the trial court denied. The trial court did not limit its denial to a particular plaintiff nor did it limit the denial to specific counts within the multiple-count complaint. Thus, it appears that the trial court denied Pulte's motion to compel arbitration in favor of all the named plaintiffs in regard to every cause of action alleged.
In ruling on a motion to compel arbitration, a trial court must decide three *309 issues: (1) whether a valid written agreement exists containing an arbitration clause; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999).
In the present case, the trial court found that a written agreement to arbitrate existed between the Smiths and Pulte. The trial court did not determine whether an arbitration clause existed to which Ms. Honnila as well as the Smith and Honnila children would be subject as third-party beneficiaries or in some other capacity. Likewise, the trial court did not, and at that juncture could not, reach the issue concerning whether an arbitration agreement existed between Pulte and some members of the potential class of litigants.
Early in the proceedings, the trial court was asked to make a determination concerning the arbitration of issues raised in a complaint involving multiple claims and parties. The trial court determined that all the claims were not arbitrable because the arbitration agreement itself did not expressly mandate arbitrating the dispute raised by the plaintiffs.[5] The trial court characterized the claims set forth in the nineteen-count complaint as a single issue, "i.e., that [Pulte] knew or should have known the homes imperiled the health, safety and welfare of the public in violation of Section 553.70 of the Florida Statutes." The trial court did not address other issues raised by the plaintiffs concerning whether the arbitration clauses were unconscionable, nor did it analyze each claim independently in order to determine the true nature of the allegation and whether each particular allegation presented an arbitrable issue.
The trial court improperly characterized the multiple and diverse claims in this action as a single-issue matter concerning public peril and, as a result, failed to make the requisite determinations regarding the arbitrability of each particular cause of action. The claims in the present case were not based entirely upon that single issue and, indeed, many of the claims were separately alleged and unique to each particular party.
It is understandable that Pulte would file a motion to compel arbitration at a very early stage in the proceedings in order to avoid a waiver of any contractual right to arbitrate. See, e.g., Merrill Lynch Pierce Fenner & Smith, Inc. v. Adams, 791 So.2d 25 (Fla. 2d DCA 2001) (affirming, in a split decision, an order compelling arbitration which the dissenting judge would have reversed due to the proponent's participation in "formal discovery"). It is equally understandable that a trial court would feel the need to promptly rule upon a motion to compel arbitration in order to move a case toward its final disposition. Nonetheless, the present case demonstrates why an early resolution of a motion to compel arbitration should not always be mandated.
In this court's abbreviated record, it is clear that Pulte filed a motion to dismiss the complaint in conjunction with its motion to compel arbitration. Prior to addressing the motion to compel arbitration, the trial court might have avoided error by first addressing the motion to dismiss and any other motions directed at the sufficiency of the pleadings, the class certification, and the need for a severance of parties and claims.
Until the trial court has responded to any motions concerning the proper parties *310 to this action, the sufficiency of each claim to state a cause of action, and the need for severance of any of the parties or claims, any determination concerning the motion to compel arbitration could result in further error. Thus, on remand, upon proper motion by the parties, the trial court should determine these other preliminary issues before ruling upon Pulte's motion to compel arbitration.
Finally, we recommend that, in the future, trial courts should consider entering a written order staying their decision on a timely motion to compel arbitration in complex cases involving multiple parties and diverse claims. The stay order should set forth case-specific parameters which will not be deemed, by the trial court, to result in a waiver of any party's right to compel arbitration. Assuming reasonable parameters are established, this procedure should protect the parties' rights to arbitration while ensuring that their rights to a court action are not improperly curtailed.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.
ALTENBERND and CASANUEVA, JJ., concur.
NOTES
[1] The first amended complaint contained in the record provided to this court indicates that in addition to Pulte Home Corporation, a foreign corporation, the plaintiffs also sought relief against three Florida corporationsDelacruz Plastering Drywall & Stucco, Inc.; Patnode Roofing, Inc.; and Steve Palmer Concrete, Inc. Those three corporations have not made an appearance in this appeal.
[2] The plaintiffs alleged that the class would include all Florida consumers who purchased, owned, rented, or resided in a Pulte home, and "persons who purchased homes from Pulte and were delivered either or both the [single family purchase agreement] and the Limited Warranty." At the time this appeal was filed, class certification had yet to be determined.
[3] The introductory allegations of the complaint were set forth in paragraphs one through six, and purported to "summarize" the action as follows:

1. This is an action for declaratory and injunctive relief, for rescission, and damages filed on behalf of all persons who have purchased or who live in houses constructed by the Defendant, PULTE, and its agents, subcontractors and employees. This class action involves two general categories of claims:
a. First, the complaint challenges certain "arbitration clauses" that PULTE has inserted into its "Single Family Purchase Agreement" ("SFPA") and its "Pulte Protection Plan" (a limited warranty hereinafter referred to as the "Limited Warranty"). The arbitration clauses are challenged under and pursuant to recognized contract defenses and as being both procedurally and substantively unconscionable.
b. Second, the complaint addresses the Defendants' construction of houses which do not comply with the State Minimum Building Codes as codified at § 553.70, et sequitur, Fla. Stat. and the resultant harm suffered by persons who purchased and/or live in PULTE'S houses, including physical illness, personal injuries, loss of value, costs of repair and related damages. This suit is authorized under § 553.84, Fla. Stat.
[4] Regarding issues common to the potential class, of which the plaintiffs are members, the tenth paragraph alleged:

10. There are questions of law and fact common to the class, including but not limited to:
a. Whether the homes constructed by the Defendants violated the State Minimum Building Codes.
b. Whether homes constructed by the Defendants are infested with water intrusion and toxic mold, causing injury and illness or the danger thereof to members of the Plaintiff class.
c. Whether the Defendant, PULTE, utilizes arbitration clauses in its contracts and warranties that are subject to contract defenses and are substantively and procedurally unconscionable.
[5] Based upon a review of the limited record before this court, it appears that absent a determination that the arbitration agreements are not enforceable, most if not all of the Smiths' causes of action will be subject to arbitration.